# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

SEAN L. McCLAIN,
EVA G. BUCK
ROBERT A. ROBERTSON, JR.,
JAMAR A.T. HOOSER
a/k/a "Butter",
AMY R. ROBERTSON,

**CRIMINAL COMPLAINT**
(SEALED)

CASE NUMBER: 3:15-mj- 1-WGH-01/05

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. Beginning on or about November 2014 and continuing up to and through January 6, 2015, in the Southern District of Indiana, Evansville Division, and elsewhere, SEAN L. McCLAIN, EVA G. BUCK, ROBERT A. ROBERTSON, JR., JAMAR A.T. HOOSER a/k/a "Butter", and AMY R. ROBERTSON, defendants herein, did knowingly conspire together and with diverse other persons, to possess with the intent to distribute and to distribute 500 grams or more of a substance containing methamphetamine, a Schedule II Non-Narcotic Controlled Substance,

in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A) and 846. I further state that I am a Task Force Officer, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

_____
Ethan Smith, Task Force Officer, DEA

Sworn to before me, and subscribed in my presence

January 6, 2015
**Date**

at Evansville, Indiana

RICHARD L. YOUNG, Chief Judge
**Name and Title of Judicial Officer**

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF APPLICATION

Ethan Smith, being duly sworn under oath states as follows:

1. This affidavit is submitted in support of a criminal complaint for the arrest of Sean McClain, Eva Buck, Robert Robertson Jr., Jamar Hooser a/k/a "Butter", and Amy Robertson charging them with conspiring to possess with intent to distribute and to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine, a Schedule II non-narcotic controlled substance, in violation of Title 21, United States Code, Sections 841 and 846.

2. I am a Task Force Officer with the Drug Enforcement Administration, United States Department of Justice. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. I have been employed by the Vanderburgh County Sheriff's Office (hereinafter "VCSO") as a sheriff's deputy since September 1997. I am currently assigned to the Drug Enforcement Administration (hereinafter "DEA"), Evansville Post of Duty, as a federally deputized Task Force Officer and have been so assigned since January 2006. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846 and 848. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. I have testified in judicial proceedings and prosecutions for violations of controlled substance laws. I also have been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking in violation of Title 18, United States Code, Section 1956.

4. In late 2014, members of the DEA Evansville Post of Duty Office and the Evansville-Vanderburgh County Drug Task Force (hereinafter EVCDTF) initiated an investigation into the illegal drug activities of Sean McClain, James Ling a/k/a "Jimbo", Eva Buck a/k/a "Gail", Robert Robertson Jr. a/k/a "Bro" (Buck's son), Jamar Hooser a/k/a "Butter",

Amy Robertson (Buck's daughter) and others, who were believed responsible for the distribution of controlled substances throughout the Evansville area.

5. To date, multiple controlled purchases of methamphetamine have been conducted from members of the DTO in Evansville, Indiana and court authorized wire and electronic surveillance has been conducted over three telephones. As set forth below, there is probable cause to believe that McClain, Buck, R. Robertson, Hooser, A. Robertson and their associates are distributing controlled substances in the Southern District of Indiana.

### Controlled Purchases made by Individual #2 from Hooser.

6. Individual #2 is cooperating with law enforcement officers in exchange for the hope of consideration regarding a narcotics case that could potentially be filed. Individual #2's information has proven to be reliable and credible as your Affiant has corroborated that information, to the extent possible, with information independently gathered through this investigation. Individual #2 has participated in three (3) controlled-buys and has placed consensual phone calls/text messages in the presence of law enforcement. Individual #2 has consented to law enforcement looking through text messages between Individual #2 and Hooser. Individual #2 has agreed to utilize audio/video recording instruments during controlled-buys. Your Affiant is aware of no instances in which Individual #2 has provided false information.

7. In November, 2014, Individual #2 stated that he/she was in position to purchase methamphetamine from Jamar Hooser a/k/a "Butter", in Evansville, Indiana. Upon receiving the above information regarding Hooser, law enforcement officers began using Individual #2 to make controlled purchases of crystal methamphetamine from Hooser. On each occasion, the controlled buys were initiated by telephone calls and text messages made by Individual #2 to Hooser. Prior to each of the two controlled methamphetamine buys, Individual #2 was searched for contraband, weapons, and money. Following the searches of Individual #2's person, agents gave Individual #2 Government provided funds to make the purchases, and conducted surveillance of Individual #2 as he/she went to the designated meeting spot. The purchases were all recorded by means of digital recorders utilized by Individual #2. Following the purchases, Individual #2 was surveilled as he/she returned to the meeting locations and met with the agents. The agents then retrieved the purchased methamphetamine, and again searched Individual #2's person. On each controlled buy, the substance obtained by Individual #2 was field tested by law enforcement where a positive indication for the presence of methamphetamine was observed.

The substances have been sent to the forensic laboratory for testing, and analysis is still pending. The two purchases of methamphetamine are summarized as follows:

8. On November 20, 2014, acting at the direction of law enforcement, Individual #2 purchased approximately one-quarter of an ounce methamphetamine for $600 from Hooser. This purchase was initiated when Individual #2 contacted Hooser by text message. Hooser called Individual #2 a short time later and the two made arrangements to meet. Individual #2 then travelled to 1126 E. Virginia Street in Evansville, which is a residence utilized by Hooser. While inside the residence, Individual #2 provided Hooser with $600.00 in United States currency and in return, Hooser provided Individual #2 with approximately a quarter-ounce of methamphetamine. Individual #2 left the residence, met back with law enforcement and turned over approximately a quarter-ounce of methamphetamine. Individual #2 was searched by law enforcement prior to and following the drug transaction and no contraband was located.

9. On December 4, 2014, acting at the direction of law enforcement, Individual #2 purchased approximately a one-eighth of an ounce methamphetamine for $550.00 from Hooser. This purchase was initiated when Individual #2 contacted Hooser by telephone and Hooser instructed Individual #2 to meet him at the house on Fourth Avenue. Law enforcement knew this house to be located at 710 N. Fourth Avenue in Evansville, Indiana. Individual #2 then travelled to 710 N. Fourth Avenue where he/she waited for Hooser to arrive. Upon arrival, Hooser and Individual # 2 entered into the residence. While inside the residence, Individual #2 provided Hooser with $550.00 in United States currency and in return, Hooser provided Individual #2 with approximately an eighth of an ounce of methamphetamine. Individual #2 left the residence, met back with law enforcement and turned over approximately one-eighth of an ounce of methamphetamine. Individual #2 was searched by law enforcement prior to and following the drug transaction and no contraband was located.

### Controlled Purchases made by Individual #6 from Ling and Buck.

10. Individual #6 is cooperating with law enforcement officers in exchange for the hope of consideration regarding multiple felony level charges, one (1) of which has not been filed but could potentially be filed. Individual #6's information has proven to be reliable and credible as your Affiant has corroborated that information, to the extent possible, with information independently gathered through this investigation. Individual #6 has participated in a multiple controlled-buys and has placed consensual phone calls in the presence of law

enforcement. Individual #6 has agreed to utilize audio/video recording instruments during controlled-buys. Your Affiant is aware of no instances in which Individual #6 has provided false information.

11. In December, 2014, Individual #6 stated that he/she was in a position to purchase methamphetamine from James Ling and Eva Buck, in Evansville, Indiana. Law enforcement learned through the course of the investigation that Ling and Buck are in a relationship and live together in Evansville, Indiana. Upon receiving the above information regarding Ling and Buck, law enforcement officers began using Individual #6 to make controlled purchases of crystal methamphetamine from Ling and Buck. On each occasion, the controlled buys were initiated by telephone calls made by Individual #6 to Ling or Buck. Prior to each of the three controlled methamphetamine buys, Individual #6 was searched for contraband, weapons, and money. Following the searches of Individual #6's person, agents gave Individual #6 Government provided funds to make the purchases, and conducted surveillance of Individual #6 as he/she went to the designated meeting spot. The purchases were all recorded by means of digital recorders utilized by Individual #6. Following the purchases, Individual #6 was surveilled as he/she returned to the meeting locations and met with the agents. The agents then retrieved the purchased methamphetamine, and again searched Individual #6's person. On each controlled buy, the substance obtained by Individual #6 was field tested by law enforcement where a positive indication for the presence of methamphetamine was observed. The substances have been sent to the forensic laboratory for testing, and analysis is still pending. The three purchases of methamphetamine are summarized as follows:

12. On December 12, 2014, acting at the direction of law enforcement, Individual #6 purchased approximately one (1) ounce of methamphetamine for $1500 from Ling. This purchase was initiated when Individual #6 contacted Buck by telephone on December 11, 2014, where Buck advised Individual #6 that she (Buck) and Ling would be back at their residence later that evening (Law enforcement know the residence to be located at 3020 W. Virginian St, Evansville, Indiana). On December 12, 2014, Individual #6 travelled to Ling and Buck's residence. While inside the residence Individual #6 observed Ling in possession of approximately a quarter-pound of methamphetamine. Individual #6 provided Ling with $1000 in United States currency and in return, Ling provided Individual #6 with approximately one (1) ounce of methamphetamine with the expectation that Individual #6 would provide the remaining

balance at a later date. Individual #6 left the residence, met back with law enforcement and turned over approximately one (1) ounce of methamphetamine. Individual #6 was searched by law enforcement prior to and following the drug transaction and no contraband was located.

13. On December 13, 2014, acting at the direction of law enforcement, Individual #6 purchased approximately one (1) ounce of methamphetamine for $1500 from Ling and Buck. This purchase was initiated when Individual #6 contacted Buck by telephone. During the call Buck gave the phone to Ling and Individual #6 and Ling made arrangements to meet at Ling and Buck's residence. Individual #6 then travelled to 3020 W. Virginia Street in Evansville. While inside the residence Individual #6 gave Buck approximately $1500.00 in United States currency, $500.00 of which was still owed from the previous purchase, and $1000.00 was applied towards obtaining an additional ounce of methamphetamine. Buck noted this on a drug ledger which she retrieved from within the residence. Ling arrived a short time later and was observed in possession of approximately a quarter-pound of methamphetamine. Ling later provided Individual #6 with approximately one (1) ounce of methamphetamine with the expectation that Individual #6 would provide the remaining balance at a later date. Individual #6 left the residence, met back with law enforcement and turned over approximately one (1) ounce of methamphetamine. Individual #6 was searched by law enforcement prior to and following the drug transaction and no contraband was located.

14. On December 17, 2014, acting at the direction of law enforcement, Individual #6 purchased approximately one (1) ounce of methamphetamine for $1500 from Ling. This purchase was initiated when Individual #6 contacted Ling by telephone. During the call Individual #6 and Ling made arrangements to meet at Ling and Buck's residence. Individual #6 then travelled to 3020 W. Virginia Street in Evansville. While at the residence, Individual #6 gave Ling approximately $1980.00, $500.00 of which was still owed from the previous purchase and $1480.00 would be applied towards obtaining an additional ounce of methamphetamine. Individual #6 observed Ling in possession of approximately one pound of methamphetamine. Ling later provided Individual #6 with approximately one (1) ounce of methamphetamine. Individual #6 left the residence, met back with law enforcement and turned over approximately one (1) ounce of methamphetamine. Individual #6 was searched by law enforcement prior to and following the drug transaction and no contraband was located.

## Interception of Wire and Electronic Communications

15. On December 10, 2014, the Honorable Les Shively, Superior Court Judge, Vanderburgh County, Indiana reviewed an affidavit and signed an order authorizing the interception of wire and electronic communications to and from Target Phone 1 (812) 549-7651, which was being utilized by Jamar Hooser. On December 10, 2014, the DEA, Indiana State Police, and the EVCDTF initiated wire and electronic surveillance over Target Phone 1.

16. On December 18, 2014, the Honorable Wayne Trockman, Superior Court Judge, Vanderburgh County, Indiana reviewed an affidavit and signed an order authorizing the interception of wire and electronic communications to and from Target Phone 3 (812) 781-0922, which was being utilized by James Ling. On December 18, 2014, the DEA, Indiana State Police, and the EVCDTF initiated wire and electronic surveillance over Target Phone 3.

17. On December 19, 2014, the Honorable Wayne Trockman, Superior Court Judge, Vanderburgh County, Indiana reviewed an affidavit and signed an order authorizing the interception of wire and electronic communications to and from Target Phone 4 (812) 781-9829, which was being utilized by Eva Buck. On December 19, 2014, the DEA, Indiana State Police, and the EVCDTF initiated wire and electronic surveillance over Target Phone 4.

## Interceptions over Target Telephone 1 (Jamar Hooser)

18. On December 14, 2014, at approximately 11:57 p.m., Hooser on Target Phone 1 placed a call to Target Phone 4, which is being utilized by Buck. During the call Hooser asks Buck if Ling is ready for Hooser to come by ("Ask pops if he's ready for me"). Buck responds ("He's asleep buddy"). Buck then says "Probably have to do it at daylight. I mean at daylight I can do, but…". Hooser then asks if R. Robertson is at Buck's house ("Fuck, is bro out there? Is bro out to your crib?"). Buck tells Hooser that R. Robertson is at his home ("No baby, he's at home"). Hooser then asks Buck to tell Ling that he (Hooser) will be there in the morning. ("Alright, tells him I said I'll be there first thing in the morning.")

## Interceptions over Target Telephone 4 (Eva Buck)

19. On December 20, 2014, at approximately 2:10 p.m. Eva Buck received an incoming call on Target Phone 4 from Amy Robertson at cellular telephone number (812) 391-8783. During the call Robertson discusses with Buck how she, her brother Robert Robertson, Royce Calving, and Jamar Hooser beat Marco Johnson up for stealing methamphetamine from Amy Robertson. During the call Amy Robertson explains to Buck that she used another's person

Facebook to lure Johnson to her house. Amy Robertson then states, "He came up in here and Robert stole on him, and knocked him up against the Christmas tree and shit, he laid down on the floor and Robert kept hitting him and shit." Amy Robertson then states that Robert Robertson asked Johnson, "Where the fuck my shit was", (meaning where was the methamphetamine that Johnson stole from Amy Robertson located.) Later in the call Amy Robertson states that, "Big J had picked up a hammer and laid it next to the T.V. When Butter (Jamar Hooser) came in that's the first thing he did. He grabbed that hammer and wacked him across the head with it, then Butter wacked him three or four times, then hit him in the back cause he tried to run out the front door." Later in the call Amy Robertson states to Buck that twenty minutes later she heard on the scanner about the police and ambulance being called for someone that had been beaten up. Amy Robertson further states to Buck how Johnson came into her house and stole the methamphetamine.

20. On December 20, 2014 at approximately 3:55 p.m. Eva Buck places an outgoing call on Target Phone 4 to Amy Robertson on cellular telephone (812) 319-1568. During the call Buck and Robertson discuss Buck picking up money from Amy Robertson that is owed for crystal methamphetamine. During the call Buck asks Amy Robertson, "Nobody's at your house?" and Robertson responds, "No, why?" Buck then states, "Cause I need to get that money, cause they're getting ready to leave town", (meaning that Buck needed to get the money for crystal methamphetamine previously fronted to Amy Robertson because Ling and McClain were getting ready to leave for Arizona to pick up a load of crystal methamphetamine.) Amy Robertson then responds, "I guess I can shoot back down there real fast" (meaning Amy Robertson can go back to her house to meet with Buck and get her the money.) Buck responds, "Ya cause they're getting ready to leave town and I need to grab it," (again meaning Ling and McClain were getting ready to leave town to go to Arizona to obtain crystal methamphetamine).

21. On December 20, 2014, at approximately 5:19 p.m. Eva Buck received an incoming call on Target Phone 4 from Amy Robertson on cellular telephone number (812) 391-8783. During the call Amy Robertson and Buck again discuss Marco Johnson[1] stealing a quantity of methamphetamine from Amy Robertson. During the call Amy Robertson states to

---

[1] On December 20, 2014, the Evansville Police Department responded to a medical assist call where they encountered Marco Johnson who was found with no shoes or shirt and was bleeding severely from the head. Johnson was transported to Deaconess Hospital and during a follow up investigation was initially uncooperative with law enforcement.

Buck, "He called Kayla right here in my living room and Kayla told him Marco had way over an ounce", (meaning that Zach Pribble had called Kayla and Kayla told Pribble that Demarco Johnson had stolen over an ounce of crystal methamphetamine from Amy Robertson.) Amy Robertson then states to Buck, "Ya, I'm telling you it was like 48, 49 something yesterday and then I made a couple hundred through the night and he got the rest of it", (meaning that Amy Robertson had 48 or 49 grams of crystal methamphetamine, then sold two hundred dollar's worth of methamphetamine and that Johnson stole the rest of the methamphetamine). Later in the call Buck states to Amy Robertson, "Right that's what he gets, I mean that's his fault, he'll think twice before he robs someone else."

22. On December 20, 2014 at approximately 3:44 p.m. Eva Buck placed an outgoing call on Target Phone 4 to Robert Robertson at cellular telephone (812) 453-0987. During the call Buck states to Robert Robertson, "Call Butter and see if he, if I can come by there, wherever he's at and grab some money if he's got it, because Jimbo and Sean's leaving in about two hours and we're trying to get together all we can", (meaning that Buck wants to pick up money from Jamar Hooser that is owed to Buck and James Ling for previously fronted methamphetamine, because Ling and Sean McClain are getting ready to make a trip to Arizona to obtain methamphetamine.) Robert Robertson responds, "Alright."

23. On December 20, 2014 at approximately 6:13 p.m. Eva Buck placed an outgoing call on Target Phone 4 to Robert Robertson at cellular telephone (812) 453-0987. During the call Buck and Robertson discuss if Robertson was able to get money from Hooser, and Robertson stated that he was not able to get the money from him yet. Buck then tells Robertson that Marco Johnson, who Robertson and Hooser beat up, was in ICU with two broken jaws, fractured skull, and he can't talk. Buck states to Robertson, "Marco's sister and them came over there" (meaning Marco Johnson's sister came to Amy Robertson's house.) Robertson later asks, "Right, so why they, why they go over there?", (meaning why did Johnson's sister go to Amy Robertson's house.) Buck states, "To find out what happened." Robert Robertson states, "What Amy. I hope Amy didn't tell them nothing", (meaning he hopes Amy Robertson did not tell Johnson's sister anything about the beating.) Buck states that, "No, Amy told them, he robbed them." Robert Robertson later states to Buck, "Man, I'm about to call Amy and tell her don't be telling nobody nothing", (meaning Amy Robertson does need to be telling anybody anything about the beating of Marco Johnson.)

24. On December 21, 2014 at approximately 1:12 a.m. Eva Buck received an incoming call on Target Phone 4 from cellular telephone (812) 470-3492 a cellular telephone being utilized by Sean McClain. During the call Buck and McClain discuss James Ling meeting with McClain and Ling having $70,000.00 for McClain. McClain also discusses with Buck the amounts he is charging Ling for the methamphetamine and what he used to charge for a pound of methamphetamine. During the call McClain states to Buck, "I mean think about it, u/I doing it for 35, I was charging 16 before and I'm making nothing right now, there's a big variance there you know what I mean", (meaning that McClain is charging Ling $3500.00 per pound of crystal methamphetamine and had been charging $16,000 per pound.) Later McClain stated to Buck, "Well here's the, that's what I said, we gotta work together, because he's not going to govern my, I mean I told him, I said look dude, I'll do it for, since you, I like you, I'll give it to you at my cost and we'll split it. If you wanna go a third, me you, Gayle, that's fine, but we need to fucking have him put on this", (meaning that McClain is giving Ling the pounds of methamphetamine at his cost and that Ling, McClain and Gayle (meaning Buck) can split the profits in thirds.) Later in the call Buck tells McClain, "right I mean he's got, he's got I think umm 69, 68, or 69; he's right at 70", (meaning Ling has approximately $70,000.00 to give to McClain to purchase methamphetamine.)

### Trip to Arizona

25. On or about December 21, 2014, law enforcement learned from telephone intercepts that Ling, McClain and another Individual later identified as Michael Hoover would be flying to Arizona in order for Ling to obtain a quantity of methamphetamine and that Ling and Hoover would then return to Evansville, Indiana with the methamphetamine.

26. On December 22, 2014, law enforcement observed Ling and McClain arrive at the Louisville Airport where they later boarded a Delta Airline flight to Phoenix, Arizona. Law enforcement also discovered that Hoover had flown out of Louisville the morning of the 22nd aboard a different airline.

27. On or about December 23, 2014, law enforcement learned from wire intercepts that Ling had obtained the quantity of methamphetamine and he and Hoover had obtained a rental vehicle and were enroute back to Evansville, Indiana. Law enforcement later learned the vehicle Ling and Hoover would be travelling in was a silver 2014 Chevy Cruz bearing Arizona plate ATT 718.

28. On the morning of December 25, 2014, law enforcement observed the vehicle travelling northbound on Illinois Highway 45 near Norris City, Illinois as it was exceeding the posted speed limit. A traffic stop was then conducted by the Illinois State Police and Ling and Hoover were identified as the occupants of the vehicle. During the course of the stop a K-9 was exposed to the exterior of the vehicle and indicated to the presence of the odor of a controlled substance. A subsequent search of the vehicle ensued and approximately 17 pounds of suspected methamphetamine was recovered from within the vehicle. The substance was field tested and tested positive for methamphetamine. Ling[2] and Hoover were then placed into custody and transported to an Illinois State Police Post.

29. During a post Miranda statement, Ling advised that he and Hoover and another individual he knew as "Sean" had traveled to Phoenix, Arizona and that he (Ling) obtained the methamphetamine from a Hispanic male he knew only as "Ramon" and that he paid approximately $3750.00 per pound. Ling stated that the transaction was coordinated by "Sean" who Ling advised resides in Arizona. Ling stated this methamphetamine was intended for redistribution in the southern district of Indiana. Ling further advised that this was approximately his third trip to Arizona to obtain methamphetamine and that he had redistributed the previously obtained methamphetamine to multiple customers in the southern district of Indiana. Ling stated that "Sean" had coordinated these transactions as well. Through the investigation, law enforcement learned that "Sean" was Sean McClain.

---

[2] On December 29, 2014, a federal complaint was filed on James Ling under cause number 3:14-mj-00095-01. Ling appeared before Magistrate Hussmann for his initial hearing on December 29, 2014 and John Goodridge was appointed to represent him.

## Conclusion

30. Methamphetamine is a Schedule II Non-Narcotic Controlled Substance. Your affiant knows based upon his training and experience that the weight of the methamphetamine is indicia of dealing and not personal use.

31. Based upon the above described facts, information, observations, and training, your Affiant believes probable cause exists to charge and arrest Sean McClain, Eva Buck, Robert Robertson Jr., Jamar Hooser a/k/a "Butter", and Amy Robertson for conspiracy with intent to distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Non-Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and 846. Further, these violations occurred within the Southern District of Indiana in particular Vanderburgh County, Indiana.

_____
Ethan Smith
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed to before me this 6th day of January, 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana